## Nevin v. Louisville Trust Co.

(Decided Feb. 26, 1935.)

CARROLL & McELWAIN and W. S. KAMMERER for appellant.

GORDON, LAURENT, OGDEN & GALPHIN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

A storeroom on the corner of Fourth and Oak streets in Louisville, owned by the appellant, Hugh L. Nevin, was under lease to the Louisville Trust Company until September 1, 1935. The trust company was placed in the hands of a receiver, but resumed operations after reorganization about the middle of 1931. The building had been used as a branch bank, but it was decided to discontinue the office. Miller, a real estate agent, interested the Whelan Drug Company in the property. Eventually a lease from January 2, 1932, to September 1, 1935, being the unexpired term of the

trust company's lease, was signed by the drug company's officers in New York and returned to Louisville. On or about December 14, 1931, after a conference with an officer of the trust company on the subject of discharging it from further obligation under its contract, Nevin signed the lease to the drug company. At that time an agreement of cancellation of the former lease was executed. This instrument recited that Nevin released the trust company and that it consented to the lease to the drug company. At Nevin's suggestion, the following paragraph was included in this writing: "It is understood, however, that the cancellation shall not be binding with him unless the Whelan Drug Company, Inc., takes possession of the premises under their new lease on or before January 2, 1932."

The keys to the building were at once turned over to Miller, the real estate agent. A few days later, he caused a "for rent" sign to be placed on the building. The Whelan Drug Company never occupied the premises, but did pay Nevin the rental for seven months. It went into bankruptcy in July, 1932.

This suit was brought by Nevin to recover of the trust company the accrued rents from August 1, 1932, under the conception that it had not been released from its contract because its discharge was conditioned upon the actual occupancy of the premises by the drug company. Issue was joined upon the understanding of the parties; the trust company claiming that the drug company had taken possession and control of the property. There were some other issues on collateral matters of little relevancy. At the conclusion of the evidence, the court gave a peremptory instruction for the trust company, and the appeal is from the judgment rendered on the consequent verdict.

The argument is centered upon the clause "takes possession of the premises under their new lease"— referring to the drug company. The word "possession," disassociated from the context of a writing and unexplained by surrounding circumstances, is susceptible of different meanings. Under some circumstances "possession" and "occupancy" are regarded as practically synonymous. Under other circumstances they are easily distinguishable. 49 C. J. 1095. The appellant says that the occupancy of the premises was a substantial consideration for his release of the trust com-

pany, for his building consists of several storerooms, and the vacancy of his corner room depressed the rental value of the others. If actual occupancy was his intention, it is unfortuate that he did not see that his contract of release specified "occupy" rather than "takes possession." It may well be argued in this connection that in accepting the new tenant, which was a national chain system, the prospects were better, not only for actual occupancy, but for a renewal of the lease on its expiration.

Whether we regard the circumstances or not, the instrument must be interpreted according to the language employed—not what the parties intended to say, but what they did say. While possession may and often does mean occupancy, and the phrase "takes possession" may sometimes mean "moves in," yet in the ordinary, common usage it signifies taking into control and under dominion. The statutes require that definition under these circumstances. Section 460, Kentucky Statutes. So we should look to the dictionaries rather than to the opinions of the court where the circumstances and association of the word may have been different. Bingham's Adm'r v. Commonwealth, 196 Ky. 318, 244 S. W. 781. Webster's New International Dictionary gives several definitions of the word "possession." It is defined as "act or state of possessing"; also "act, fact, or condition of a person's having such control of property that he may legally enjoy it to the exclusion of all others having no better right than himself." The definition of the word "possess" is "to have and hold as property; to have a just right to; to be master of; to own; as to possess lands, money, a horse, a watch."

January 2, 1932, the date on which it was stipulated in this release that the new lessee should take possession, was the beginning of the term of the lease of the drug company and the date as of which it should begin paying rent, although payment was not due to be made until January 15th. Here, then, was a new contract of rental with another tenant which was to begin in the future. The provision in the release agreement would seem to have been inserted for the purpose of showing that the trust company considered itself as remaining bound unless the new lessee actually entered upon the performance of its lease in futuro.

There is nothing said about the new lessee keeping possession. The drug company was given the right to sublet the property. It did take possession in the sense ordinarily understood by business men, in that its agent had the keys to the building and it had the right and power of exercising control over the property, and in fact did so. The court has regarded this as a possession in fact. Haupt v. Pittaluga, 69 Ky. (6 Bush) 493. See, also, Shipp v. Patten, 123 Ky. 65, 69, 93 S. W. 1033. 29 Ky. Law Rep. 480; Mattingly's Ex'r, v. Brents, 155 Ky. 570, 159 S. W. 1157; Ingram v. Lane (Foster) 205 Ky. 57, 265 S. W. 434; Conley v. Shepherd, 237 Ky. 128. 35 S. W. (2d) 5; Morgan v. Commonwealth, 242 Ky. 713, 47 S. W. (2d) 543; 49 C. J. 1094. In Rawson v. Brown, 104 Ohio St. 537, 546, 136 N. E. 209, 212, it is written: ''Actual occupation is not necessary to constitute possession.''

We do not doubt that under the circumstances the drug company did take possession of the property within the meaning of the terms of the agreement of release, as the relation of landlord and tenant began on January 2, 1932. Such being the conclusion of the trial court, the judgment is affirmed.