## SCOTT et al. v. CLIETT et al.
### No. 11980.

Court of Civil Appeals of Texas. Galveston.
July 22, 1948.

Rehearing Denied Sept. 30, 1948.

W. H. Betts, of Hempstead, for appellants.

Sam G. Croom, of Houston, for appellees.

GRAVES, Justice.

This appeal is from a judgment of the district court of Waller County, entered upon a jury's verdict in response to special issues submitted, decreeing that the appellee, Irene Smith Cliett and husband, J. M. Cliett, recover the title and possession of 50 acres of land in the William Heady one-third league in Waller County, Texas, from appellants, Jeff Scott, Reed Scott, Mamie Hammond, Dr. O. O. Hammond, Bertha Scott, and Flora Scott, both individually and as administratrix of the estate of George Scott, deceased.

The appellants were the heirs-at-law of George Scott, deceased, and his estate's administratrix, respectively.

It was stipulated in the trial court that the legal title to the land was, of record, in George Scott, deceased, having been conveyed to him on October 18, 1920, by a deed from Mary Sorsby, et al., which duly went to record in Waller County.

The appellees, in their pleadings, had sought the recovery of the title to the land so awarded them, upon two counts, as follows:

(1) That "Mary E. Sorsby, et al., conveyed the above-described property to George Scott, now deceased; that the plaintiff, Irene Smith Cliett, paid $700.00 in cash on the purchase price of said property, with

the understanding and agreement with George Scott, made prior to the execution of said deed, that George Scott would hold the title to said property in trust for the use and benefit of the plaintiff, Irene Smith Cliett, and that the property would be and was the sole property of Irene Smith Cliett, with the right of the said George Scott to occupy it jointly with her during the remainder of his life.";

(2) That "said George Scott, deceased, did in fact make said plaintiff (appellee here) a verbal gift of said land in consideration of the plaintiff putting up $700.00 of the purchase-price and going into possession of the said land and providing a home, keeping house, and taking care of and nursing the said George Scott."

On the coming in of the evidence for both sides, the trial court submitted what it conceived to be the controlling issues-of-fact raised by the pleadings and evidence to the jury, upon special-issues, the most material ones of which, together with the jury's answers thereto, were as follows:

"No. 1. Do you find from a preponderance of the evidence that on or about October 18, 1920, Irene Smith Cliett paid the sum of $700.00 as part purchase-price of the property in question? 'We do'.

"No. 2. Do you find from a preponderance of the evidence that on or about October 18, 1920, the plaintiff, Irene Smith Cliett, and George Scott agreed that, if Irene Smith Cliett paid the sum of $700.00 on the purchase-price of the property in question, that upon purchase thereof said property would be the sole property of Irene Smith Cliett? 'We do'.

"No. 3. Do you find from a preponderance of the evidence that upon reliance on said agreement, Irene Smith Cliett paid the sum of $700.00 as part purchase-price of said land in question? 'We do'.

"No. 4. Do you find from a preponderance of the evidence that on or about October 18, 1920, George Scott orally gave to Irene Smith Cliett his full title and interest in or to be acquired by him in the property in question? 'We do'.

"No. 5. Do you find from a preponderance of the evidence that Irene Smith Cliett, relying on said gift, shortly thereafter entered into possession of said property? In connection with the foregoing Issue, you are instructed that the word, 'possession', as herein used, does not necessarily mean exclusive possession, but can mean the joint-possession of Irene Smith Cliett and George Scott. 'We do'.

"No. 6. Do you find from a preponderance of the evidence that Irene Smith Cliett, relying on said gift, did make permanent and valuable improvements on said property, with the knowledge and consent of George Scott? 'We do'.

"No. 7. From a preponderance of the evidence, what do you find to be the reasonable value, if any, of improvements made, if any, on the property in question by Irene Smith Cliett from October 18, 1920, to January 21, 1933? '$2500.00'."

Appellants, in this court, inveigh against the judgment so adverse to them below, upon four points-of-error, the material substance of which is this:

"1. The only evidence of any agreement with or promise by George Scott to Irene Smith Cliett concerning a gift of these lands by him to her reflecting that such agreement was conditioned upon payment of an onerous consideration, the trial court erred in holding that such agreement, if made, constituted a parol gift of such lands, and in submitting Special Issues Nos. 2 and 4, which inquired of the making thereof.

"2. The only agreement with or promise by George Scott to Irene Smith Cliett concerning a gift of the subject lands by him to her conclusively showing upon its face that before such transaction could or was to be completed he was yet to acquire title to the lands, and she was required to pay $700 of the purchase price therefor and provide him with a home thereon for an indefinite time, the same was, as a matter of law, but a mere executory promise or agreement to give, and the title did not then pass; and the trial court erred in holding that such transaction, if true, constituted a gift in præsenti, and in submitting Special Issues Nos. 2 and 4.

"3. The court erred in submitting Special Issues Nos. 2 and 4 because, as a matter of law, the evidence fails to show that, at

the time and on the occasion inquired about, George Scott intended to absolutely and irrevocably divest himself of the title to, dominion over, and control of subject lands, in præsenti.

"4. The trial court erred in holding that a joint-possession of such lands by the alleged donor thereof, George Scott, and the alleged donee, Irene Smith Cliett, was sufficient possession of such lands by such donee to support the alleged parol gift thereof."

■ After a careful review of the record, it is determined that none of the appellants' quoted contentions should be sustained; but that, on the contrary, the trial court's theory-of-law that issues-of-fact had been so raised over whether or not both a parol trust on 'and a like gift of the land in favor of the appellee, Irene Smith Cliett, was correct, and that the jury's findings thereon were sufficiently supported by the evidence.

It would be going beyond the requirements to undertake a detailed restatement, or even a comprehensive resume, of the testimony found in the statement-of-facts supporting these two determinative and ultimate issues-of-fact; that is, whether the dealings between George Scott, deceased, and Irene Smith Cliett were of such a character as to give rise to both a parol trust upon, and a gift—then made—of the lands to her.

Suffice it to say that, in the opinion of this Court, the evidence was definitely of a character sufficient, under the law of Texas, to constitute both such a trust and a gift; for instance, it was in final substance directly testified to that, before he bought the land from the Sorsbys, et al., George Scott induced Mrs. Cliett to put up $700 in cash— along with 10 bales of cotton he himself then owned—to constitute joint funds for buying the land, he in connection therewith agreeing that, if she did so, the property would be hers; that she so gave the money, along with other contributions then made thereto, and that her family and Scott moved into it together—they having been old family friends for a long time, and that they so lived there in joint possession under the agreement so made until Scott's death;

That thereafter the appellee continued to live there from time to time, making improvements upon the property at her own expense until the date of this trial;

That the original deed to the property from Sorsbys et al. to George Scott had been drawn up in his name, with the approval of Mrs. Cliett at that time, and under their joint-understanding that the property was and would so be hers;

■ Under the equivalent of such conditions, it is well established in Texas that a parol trust may be engrafted, as was decreed by the trial court in this instance, on a deed absolute in form. James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743; Bailey v. Harris, 19 Tex. 108, 109; Leakey v. Gunter, 25 Tex. 400; Carl v. Settegast, Tex. Com.App., 237 S.W. 238; Lassiter v. Bouche, Tex.Civ.App., 5 S.W.2d 831, 833; Id., Tex.Com.App., 14 S.W.2d 808, at page 809, trust upheld; Johnson et al. v. Smith et al., 115 Tex. 193, 280 S.W. 158; 20 Tex. Jur., pages 268–270.

Not only so, but the testimony sufficiently supported the jury's answers under issues Nos. 4 to 7, inclusive, to the effect that a gift at that time was made by George Scott to Mrs. Cliett and was followed up by her continuous occupation and improvement of the property pursuant thereto.

While the trial court, applying Article 3716, Revised Civil Statutes of Texas, commonly called "The Dead Man's" statute, ruled appellee Mrs. Cliett ineligible in her own behalf to offer testimony concerning the agreement between herself and George Scott as to just how they were to own and possess this property, the appellants, in turn, on their cross-examination of Mrs. Cliett elicited from her the very positive testimony that such agreement between herself and George Scott had then been that she was to own the property, upon their stated joint-purchase thereof, and that there was then a coincident gift of it from him to her.

From all such testimony, there was this summation from the appellee:

"Q. You were aware that the title to that fifty acres was in Mr. George Scott? A. Sure, I knew the deed was made out to Mr. Scott.

"Q. You knew that at the time Mr. Goodrum came out there? A. I knew the deed was drawn up in Mr. Scott's name because I thought it was best to do that. I never had bought land or anything, and I went ahead and he drew the deed up that way. I knew it was my understanding the place was mine.

"Q. You knew the deed that Mr. Goodrum delivered there conveyed the title to Mr. George Scott? A. I didn't know anything about what title meant as far as that is concerned. All I knew, the title to the place was mine before I went out there.

"Q. You knew it was in the name of George Scott? A. It didn't amount to anything. It was my understanding it was. As to who paid for the property, it was my understanding it was mine.

"Q. When did you pay the taxes on it? A. I made the money that paid the taxes, the first that was ever paid.

"Q. When did you ever render it for taxation? A. It has been rendered all the time and has never been delinquent.

"Q. Whose name did you render it in? A. It was always paid just like it was drawn. I never gave it a thought. I liked Mr. Scott and I trusted him and I never thought anything about that. He was still living there and it was my property and my land and it belonged to me."

While it is true, as indicated supra, that George Scott occupied the property jointly with Mrs. Cliett's family until his death, it further appeared that he not only never claimed to own it, but on the contrary, on many occasion told many of the witnesses who so testified on this trial that, "Irene Smith Cliett owned the property, and that he had no interest in it".

Under such circumstances, our authorities hold not only that a parol gift in praesenti of such property was made out, but further, uniformly, that the possession of such a donee thereof, as Mrs. Cliett was thus shown to have been, would not need to be exclusive; Patterson et al. v. Patterson, Tex.Civ.App., 27 S.W. 837, writ of error refused; Cauble et al. v. Worsham et al., 96 Tex. 86, 70 S.W. 737, 97 Am.St.Rep. 871; Davis et ux. v. Douglas, Tex.Com.App., 15 S.W.2d 232; Lehman et al. v. Barry, Tex.

Civ.App., 126 S.W.2d 499, dismissed—correct judgment; Reyes et al. v. Escalera et al., Tex.Civ.App., 131 S.W. 627; 20 Tex. Jur., pages 338 to 342; 20 Tex.Jur., pages 334–35; 21 Tex.Jur., pages 37–38.

The other questions discussed in the briefs need not be further nor more specifically disposed of, since it is held that the conclusions stated required an affirmance of the trial court's judgment.

It will be so ordered.

Affirmed.